UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-316-GWU

LINDA C. TUCKER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

### INTRODUCTION

The plaintiff originally filed her application for Supplemental Security Income (SSI) in January, 2001, alleging disability due to fibromyalgia, memory loss, and depression. (Tr. 56). After a period of reconsideration prompted by the Court's remand of March 21, 2005, Tucker v. Barnhart, London Civil Action No. 04-171-GWU (E.D. Ky.) (Tr. 363-9), the case is again before the undersigned on cross-motions for summary judgment.

### APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a

1

Tucker

whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

Tucker

appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading

Tucker

of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The previous decision by an Administrative Law Judge (ALJ) was remanded because the ALJ rejected the opinion of Dr. Herbert Schapera, the only treating or examining physician to specifically comment on the question of work-related restrictions. (Tr. 368). On remand, the ALJ obtained an additional examination by another physician, Dr. Raymond Santucci, by a consultative psychological examiner, Dr. Gary Maryman, additionally accepted additional evidence submitted by the plaintiff, as well as her additional testimony at a supplemental hearing, and finally obtained testimony from a medical expert (ME) who had the opportunity to review the written evidence.

The ALJ concluded that, although Mrs. Tucker had "severe" impairments consisting of fibromyalgia, morbid obesity, borderline intellectual functioning, and an affective (mood) disorder, she retained the residual functional capacity to perform a significant number of jobs existing in the economy, and was not entitled

Tucker

to benefits. (Tr. 343-6). At the supplemental hearing, the ALJ had asked a vocational expert (VE) whether a person of Mrs. Tucker's work history and educational background could perform any jobs if she were limited to "light" level exertion, with a sit/stand option every hour, and also had the following non-exertional restrictions. (Tr. 435-6). She: (1) could not climb ladders or work at unprotected heights; (2) could occasionally bend, stoop, squat, or climb stairs; and (3) had a "seriously limited but not precluded" ability to deal the public and understand, remember, and carry out complex job instructions. (Tr. 436). Her ability to make other occupational, performance, and personal/social adjustments was described as "limited but satisfactory." The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 437).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

Turning first to Mrs. Tucker's mental status, the hypothetical factors are consistent with the opinion given by Dr. Maryman. (Tr. 398-90). There is no evidence of greater restriction from a treating source, and the ALJ could reasonably have declined to accept the greater restrictions described by a previous one-time examiner (Tr. 306-7), who is not entitled to greater weight than Dr. Maryman. Therefore, this portion of the hypothetical question was supported by substantial evidence.

5

Tucker

The plaintiff's arguments on appeal focus on physical factors.

At the supplemental hearing, the plaintiff testified she was unable to work because of pain in her back and right leg, which she related to a spider bite in October 1993. (Tr. 419). She also described problems with her right hand, which sometimes cracked open and dripped brownish water. (Tr. 420, 422). She claimed that her doctors had told her this was caused by fibromyalgia, but had only been given an ointment to use. (Id.). She was unable to perform manipulations such as buttoning clothes, opening cans or tight doorknobs, or picking up small items from a table. (Tr. 422-3). The only medication she took was Tylenol. (Tr. 421). She also asserted that her fibromyalgia affected her eyes, making it difficult to focus at times. (Tr. 425). She testified that she weighed 268 pounds at a height of five feet three inches, and conceded that it would be easier for her to move around if she could lose weight. (Tr. 426).

The ME, Dr. Edward Allen Griffin, testified that Mrs. Tucker's obesity would limit her to "light" level exertion with the additional physical restrictions accepted by the ALJ and given in the hypothetical question. (Tr. 429-30). He stated that there was no objective evidence to substantiate her assertions that she was unable to pick up a penny. (Tr. 431). Although she complained that her hands were swollen, the objective findings were to the contrary. (Tr. 433).

The plaintiff objects on appeal that Dr. Griffin testified by telephone, and never saw the plaintiff's hands. While this is true, the fact remains that all three

consultative physical examiners, including Dr. Martin Fritzhand, Dr. Schapera, and Dr. Santucci, found normal manipulative ability in their narrative reports. (Tr. 244, 295, 403). While Dr. Schapera did indicate in a functional capacity assessment form that Mrs. Tucker was unable to use her hands for simple grasping or manipulating (Tr. 297), this conclusion is not well-supported by objective findings in his narrative report, and is clearly at variance with findings of the other examiners and the specific conclusions of Dr. Santucci, who found a completely normal musculoskeletal examination, and described the plaintiff's reported symptoms as "bizarre." (Tr. 404-6). Therefore, the plaintiff's arguments regarding manipulative ability are without merit.

The plaintiff further objects that the ALJ erred in stating that she accepted the narrative portion of Dr. Schapera's report, while rejecting the restrictions given in his functional capacity assessment. (Tr. 338). The ALJ correctly noted that the functional capacity assessment was inconsistent with many of the narrative findings, and, as a one-time examiner, Dr. Schapera was not entitled to the deference accorded a treating source. At the time of the Court's prior decision, he was the only physician who had given a specific functional capacity assessment, but that is no longer the case. The ALJ could reasonably have relied upon the subsequent one-time examiner, Dr. Santucci, who also offered an assessment (Tr. 406), and did rely on the opinion of the ME, Dr. Griffin, who had reviewed all the evidence (Tr. 429-30). Barker v. Shalala, 40 F.3d 789, 794-5 (6th Cir. 2001).

7

Tucker

Finally, the plaintiff makes the general argument that the ALJ did not properly evaluate her complaints of pain under the test given in <u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986), and did not properly evaluate her obesity under Social Security Ruling (SSR) 02-01p.  Considering the lack of objective evidence of a condition which could be expected to cause disabling pain, the plaintiff's use of only mild, over-the-counter medications for pain, and the ALJ's detailed discussion of the plaintiff's subjective complaints in this area (Tr. 340-1), the ALJ adequately dealt with the <u>Duncan</u> factors. Regarding SSR 02-01p, the ALJ did find that the plaintiff's morbid obesity was a "severe" impairment (Tr. 340), and accepted the ME's testimony that, while obesity would limit Mrs. Tucker to light level work, she did not meet a Listing of Impairment (Tr. 429). <u>See</u> SSR 02-01p, pp. 4-6. The plaintiff has presented no evidence from a medical source that her obesity would meet a listing.  Her argument that her obesity was improperly evaluated under SSR 02-01p circles back to the form conclusions of Dr. Schapera, which, as previously described, were not entitled to controlling weight.  Therefore, this argument is also without merit.

The decision will be affirmed.

This the 14th day of May, 2007.



**Signed By:**

<u>**G. Wix Unthank**</u>

**United States Senior Judge**

8